UMREIN,
*Appellant - Cross-Respondent,*
*v.*
TOPAZ et al,
*Defendants,*
*and*
CITY OF BEAVERTON,
*Respondent - Cross-Appellant.*

(43-455; CA A24023)

658 P2d 568

Ronald Allen Johnston, Portland, argued the cause for appellant - cross-respondent. With him on the briefs was McCormick & Reynolds, Portland.

Eleanore S. Baxendale, Assistant City Attorney, Beaverton, argued the cause and filed the briefs for respondent - cross-appellant.

Before Richardson, Presiding Judge, Joseph, Chief Judge, and Van Hoomissen, Judge.

RICHARDSON, P. J.

## RICHARDSON, P. J.

Plaintiff brought this action for injunctive and other relief against the City of Beaverton and officials of the city, alleging that the city is participating in an urban renewal project involving relocation of a railroad track in violation of § 44 of the city charter. Plaintiff appeals from the trial court's judgment dismissing the action as to the city, entered after the court granted the city's motion for partial summary judgment.[1] We affirm.

Section 44 was adopted through an initiative measure at the May, 1980, primary election. In general terms, the section restricts city involvement in urban renewal projects (other than those enumerated in a "grandfather clause"), unless it obtains prior voter approval. Because we conclude that plaintiff's specific bases for contending that the city is conducting urban renewal activities are incorrect, it is unnecessary for us to construe the section more precisely to decide this appeal. It is enough for present purposes to note that neither party contends that the charter provision applies to actions of the Beaverton Urban Renewal Agency (BURA), as distinquished from actions of the city. The basic issue is whether the city has joined or supplanted BURA as the entity conducting the urban renewal activities of which plaintiff complains.

We have noted in earlier cases that under ORS chapters 456 and 457, respectively, municipal housing authorities and urban renewal agencies are separate entities from the cities and counties that authorize their establishment and in which they exercise their responsibilities. *Telford v. Clackamas County,* 44 Or App 399, 605 P2d 1365 (1980); *Housing Auth. of Lane County v. Bd of Comm'rs,* 35 Or App 785, 787, 582 P2d 844 (1978), *rev den* 285 Or 73 (1979). That is so notwithstanding the facts that, after their establishment, urban renewal agencies remain subject for some purposes to the control of the municipalities and that the municipalities retain sole authority (or overlapping authority with the agencies) over some matters that come within the latter's general areas of operation. For example, a municipality retains the power to designate which of

---

[1] The trial court certified the judgment of dismissal as final. ORCP 67B.

the statutorily eligible entities shall act as the board of the agency (ORS 457.055); the approval of and "substantial" amendments to an urban renewal plan must be adopted by the municipality's governing body (ORS 457.095, 457.220); and the municipal governing body has ultimate authority to terminate an agency for which it finds there is no remaining need (ORS 457.075). The independence of the urban renewal agency from its municipality is nevertheless emphasized in the statutory scheme. ORS 457.045(3) provides that, even when the municipal governing body designates itself as the board of the agency:

> "* * * [A]ny act of the governing body acting as the urban renewal agency shall be, and shall be considered, the act of the urban renewal agency only and not of the governing body."

■ Plaintiff does not argue that the charter is violated by any urban renewal involvement of the city that ORS chapter 457 specifically prescribes for municipalities. She also "agrees for purposes of this appeal, that a City Charter ordinarily does not govern or constrict the powers of [an urban renewal agency]." She then sets the following formidable task for herself:

> "* * * In order for plaintiff to base her injunction on Charter §44, therefore, she must necessarily 'bridge the gap' between the City Charter and BURA. She must establish that the restrictions of the City Charter upon the City Council apply to the acts of BURA, and the acts of BURA are attributable to the city; or, alternatively, that the city acting as the city is involved in the urban renewal process. To the extent that plaintiff establishes either proposition, then Charter §44 governs the urban renewal project. Plaintiff's argument is two-fold: (1) that * * * §401 [of the City's Urban Renewal Plan (URP)] makes BURA the agent of the city, and the acts of BURA therefore are subject to the control of the city; and (2) that an inverse agency relationship also exists pursuant to the 12-12-77 contract [between the city and BURA] in that the city acts as BURA's contract and disbursement agent. Plaintiff alleges that §44 prohibits the city in either capacity from condoning or taking actions with respect to railroad relocation projects. Unless one or both of plaintiff's propositions are established, however, plaintiff's case will fail." (Emphasis plaintiff's.)

ORS 457.210(3) provides:

"An urban renewal agency hereby is authorized to delegate any of its powers or functions to the municipality or other state public body, as defined in ORS 456.305, with respect to the planning or undertaking of an unban renewal project in the area in which such municipality or other state public body is authorized to act. The municipality, or other state public body to which the powers or functions are delegated hereby is authorized to carry out or perform such powers or functions."

Plaintiff argues that, pursuant to that statute, "BURA through * * * § 401 [of its URP] has chosen to delegate to [the city] all powers with respect to policy formulation, supervision and review." Plaintiff contends that the effect of the delegation

"* * * is that the City Council *acting as the City Council* now exercises supervisory and policy power in effecting the URP. The savings clause of [ORS 457.045(3)] does not apply. The power to control, whether exercised or not, is sine qua non of agency. * * * If an agency relationship exists, it is axiomatic that the city is responsible for the control of and actions of its agent. A violation of city charter §44 by BURA is therefore attributable to the city." (Emphasis plaintiff's; citation omitted.)

Section 401 of the URP provides:

*"Major Responsibility of Municipality.* The City acting through its Council and Planning Commission, and, for so long as any portion of the Project Area remains outside the City, the County acting through its Board of Commissioners and Planning Commission, shall provide overall policy direction for the Plan, with the Agency acting as their agent to implement the Plan. To accomplish this end, the Agency, City Council, City Planning Commission, and, for so long as any portion of the Project Area remains outside the City, the Board of County Commissioners and County Planning Commission, shall meet not less than once each year to review the progress of the Plan and to determine necessary amendments, if any, to improve its execution."

Plaintiff also argues:

"* * * By contract dated 12-12-77, BURA agreed to delegate all staff functions to the city and further irrevocably pledge all of its funds to the city to pay for said services. This contractual delegation is authorized and

proper under ORS 457.210(3). * * * The effect, however, is that the city, *acting as the city and as a corporate body distinct from BURA,* has been hired to administer and carry out BURA's operations. More importantly, Section 3 of the contract requires BURA to pay all of its funds to the city. Whether acting as BURA's administrative agency, or whether acting in the course of spending BURA's funds pledged to it, the city is still acting in its capacity as the city. In so doing, it must conform to all provisions of its charter." (Emphasis plaintiff's.)

In sum, plaintiff contends that the purported delegations under the URP provision and the contract (1) create relative urban renewal roles for the city and BURA that differ from the standard relationship between cities and urban renewal agencies prescribed by ORS chapter 457; (2) make BURA the city's agent for urban renewal purposes; and, therefore, (3) make the city instead of or along with BURA the efficient actor in Beaverton's urban renewal projects.

It is questionable whether *any* delegation made pursuant to ORS 457.210(3) can have those effects. In the first place, such a delegation would seem to make the city the agent of BURA rather than making BURA an agent of the city. Moreover, in light of the express provisions of ORS chapter 457 to the effect that urban renewal agencies and municipalities are distinct entities with distinct functions, the legislature presumably would have been equally explicit if it intended to eliminate those distinctions in the event of a delegation from an agency to a municipality pursuant to ORS 457.210. That statute contains no language indicating such an intent.[2]

In any event, even if a delegation pursuant to ORS 457.210 *could* have the legal effects plaintiff suggests, neither the URP provision nor the contract would have those effects here. As discussed above, ORS chapter 457

---

[2] ORS 457.075 provides, when an agency is terminated:

"* * * The termination * * * shall not affect any outstanding legal actions, contracts or obligations of the agency and *the municipality shall be substituted for the agency and,* for purpose of those legal actions, contracts or obligations, *shall be considered a continuation of the urban renewal agency and not a new entity.* * * *" (Emphasis supplied.)

No language of comparable import appears in ORS 457.210.

requires municipalities to retain many incidents of policy direction, ranging from initial approval and amendment of plans to the termination of urban renewal agencies after the municipal governing body's determination that the need for the agency no longer exists. Section 401 of the URP gives the city no urban renewal responsibilities different in substance from those the statutes place on it.

Plaintiff's argument based on the contract between BURA and the city is difficult to understand. As we read the contract—and as we understand plaintiff to read it—it provides generally that in consideration of BURA's irrevocable pledge of "any and all revenue, accrued or that may accrue to or otherwise be obtained by [BURA]," the city will furnish personnel and services to BURA. The contract also expressly provides that "[t]he *City* agrees to act as the *agent of [BURA]*" for the specified purposes. (Emphasis supplied.) We do not see how the contract makes BURA the city's agent or involves the city in urban renewal activities. The contract simply makes the city a seller of goods and services to BURA and not an independent participant in BURA's urban renewal actions.

Plaintiff also argues that the expenditure of funds by the city under the contract constitutes city involvement "in its capacity as the city" in urban renewal activities. On its face, the contract provides for the payment of consideration by BURA to the city for all services provided, and no *city* funds are involved. To the extent that the city disburses *BURA* funds under the contract, it acts only as BURA's agent and as a conduit for BURA.

The trial court correctly granted the motion for partial summary judgment.[3]

Affirmed.

---

[3] In what it denominates a cross-appeal, *but see Artman v. Ray,* 263 Or 529, 501 P2d 63, 502 P2d 1376 (1972), the city contends that plaintiff is estopped by an earlier proceeding from raising the issues she does here. The city's estoppel by judgment argument *appears* to raise some questions which have not previously been decided in Oregon. We are not satisfied that the record in this summary judgment proceeding provides us with adequate information about the earlier litigation on which to base a decision of those questions.